UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>QTRAX, INC., a Delaware corporation, and DOES 1 through 10 inclusive,<br><br>Defendants. | Case No: C 09-3334 SBA<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SET ASIDE DEFAULT**<br><br>Docket 36, 41 |

This is a collections action in which Plaintiffs Oracle USA and Oracle International Corporation (collectively, "Oracle") seek to recover approximately $1.9 million for software licenses that Defendant Qtrax Inc. ("Defendant" or "Qtrax") failed to pay. The parties are presently before the Court on Defendant's Motion to Set Aside Default. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); Civ. L.R. 7-1(b).

I.  **BACKGROUND**

   A.  **FACTUAL SUMMARY**

In December 2007, Oracle and Qtrax entered into an Oracle Services and Licensing Agreement and Ordering Document (collectively, "2007 Order") with Qtrax, allowing it to use

Oracle's database applications and related services.  (McKague Decl. ¶ 7.)  These licenses permitted Qtrax to deploy each application only to a limited number of "users" and computer "processors."

In November 29, 2008, Qtrax and Oracle executed another Ordering Document ("2008 Order") which converted and replaced the existing limited licenses that were purchased under the 2007 Order with "unlimited deployment" licenses for the same software programs. (McKague Decl. ¶ 10, Ex. A § F.1.)  This change removed the restriction on the number of users who could use the software program at a given time.  The 2008 Order superseded the 2007 Order and Qtrax had no right to obtain refunds or reinstate terms in relation to the licenses and fees of the 2007 Order.  The 2008 Order stated, in relevant part:

> In connection with the Unlimited Deployment Right granted under this ordering document, all licenses of any versions or releases of the Unlimited Deployment Programs that were acquired by you prior to the effective date of this ordering document shall be converted and replaced as of the effective date of this ordering document ("The Converted and Replaced Licenses").  *You will no longer have any right to use the Converted and Replaced Licenses, nor will you be permitted to reinstate the Converted and Replaced Licenses*. You shall not be entitled to a credit or refund of license fees for the Converted and Replaced Licenses.

(McKague Decl. Ex. A § F.1 (emphasis added).)

Qtrax did not pay for the 2008 Order and currently owes Oracle $1,883,591.55 in unpaid license and consulting fees.  Since early 2009, Oracle has been attempting to collect this debt from Qtrax.  (McKague Decl. ¶ 12.)  Prior to the filing of this action, Robert L. McKague, Senior Corporate Counsel for Oracle, had numerous conversations and email exchanges with Allan Klepfisz, Chief Executive Officer of Qtrax, and Chief Technology Officer Chris Roe, regarding the past due amount. Oracle's goal was to obtain payment without litigation.  During the course of these communications, Messrs. Klepfisz and Roe acknowledged that Qtrax owed Oracle $1,883,591.55 in license and support fees.  (Id.)  During March 2009 and July 2009, Mr. Klepfisz represented to Oracle that Qtrax was in the process of obtaining additional funding and it would pay its debt.  (Id. ¶ 13.)  These promises were contained in emails sent by Mr. Klepfisz to Oracle, dated April 17, 2009, May 5, 2009, and May 29, 2009. (McKague Decl. Ex.

1  B.) In these emails, Qtrax never denied nor disclaimed responsibility for its obligation to pay
2  Oracle these fees. Additionally, Qtrax never suggested that Oracle had misrepresented the
3  terms of the 2008 Order, which Mr. Klepfisz had signed on behalf of Qtrax.

### B. PROCEDURAL HISTORY

After numerous efforts by Oracle to negotiate with Qtrax, and many failed promises by Qtrax to pay, Oracle filed this action for injunctive relief and damages on July 21, 2009, and served Qtrax on August 17, 2009. Qtrax's responsive pleading was originally due on September 8, 2009. On September 21, 2009, Mr. Klepfisz, as CEO of Qtrax, submitted a letter to the Court requesting a forty-five day extension of time to respond to Oracle's Complaint. (Docket 6.) The next day, Oracle filed a request for entry of default with the Court, which was declined. (Docket 8.) The Court granted Qtrax's request for an extension of time to respond to the complaint and expressly advised Qtrax that as a corporation, it may appear in Court only through counsel. (Docket 9.) Qtrax obtained counsel "soon thereafter." (Klepfisz Decl. ¶ 4.)

Despite the extension and retention of counsel, Qtrax failed to file a responsive pleading by the October 23, 2009 deadline. Oracle again requested entry of default, but was denied because the Clerk of the Court interpreted the forty-five day extension to begin running on September 21, 2009 (the date Qtrax had submitted its request for extension). (McKague Decl. ¶ 20.) By November 5, 2009 (forty-five days after the Court's September 21, 2009 Order), Qtrax still had not filed a responsive pleading. On November 6, 2009, Oracle filed its third request for default. On November 9, 2009, the Clerk entered the default against Qtrax. (Docket 14.)

On February 3, 2010, Oracle filed a separate case management statement in anticipation of the case management conference scheduled for February 11, 2010. (Docket 17.) In its statement, Oracle indicated that as of December 2009, it appeared that a settlement had been reached, and that in early January 2010, Oracle sent Qtrax a proposed settlement agreement. However, Qtrax did not follow up with Oracle. Oracle indicated that if it did not hear from Qtrax by February 5, 2010, it would seek a default judgment. On February 10, 2010, the Court, after reviewing Oracle's case management statement, issued an order directing Oracle to file a

1  motion for default judgment within thirty days, and referred said motion to a magistrate judge
2  for a report and recommendation.  (Docket 18.)
3        Oracle filed its motion for default judgment on March 12, 2010.  The motion was
4  referred to Magistrate Judge Zimmerman, who scheduled the motion hearing for May 5, 2010.
5  On April 14, 2010, months after Qtrax had failed repeatedly to take the steps necessary to settle
6  the dispute, and one month after Oracle had filed its motion for default judgment, Mr. Bruce
7  Bieber, an attorney representing Qtrax stated, "if you [Oracle] enter the judgment, so be it, you
8  certainly can."  In this message, Mr. Bieber indicated no objection to entry of the original
9  default.  (McKague Decl. ¶ 28.)
10        On May 4, 2010, Qtrax filed a motion to set aside the default.  (Docket 36.)  The next
11  day, Qtrax filed a motion to stay the default judgment hearing in order to allow the Court to
12  consider its motion to set aside default. (Docket 35.)  As a result, Magistrate Judge Zimmerman
13  did not proceed with the default judgment hearing.  (Docket 40.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 55(c) provides that a court may set aside a default for "good cause shown."  The requisite good cause for setting aside a default under Rule 55(b) is the same standard that applies for vacating a default judgment under Rule 60(b).  <u>Franchise Holding II, LLC. v. Huntington Restaurants Groups, Inc.</u> 375 F.3d 922, 925 (9th Cir. 2004). The Ninth Circuit has stated that a district court may deny a motion to vacate a default judgment if:  "(1) the plaintiff would be prejudiced if the judgment is set aside, (2) defendant has no meritorious defense, or (3) the defendant's culpable conduct led to the default." <u>Am. Ass'n of Naturopathic Physicians v. Hayhurst</u>, 227 F.3d 1104, 1108 (9th Cir. 2000).  "This tripartite test is disjunctive," meaning that the district court may deny a motion to set aside a default if any of these three factors are true.  <u>In re Hammer</u>, 940 F.2d 524, 526 (9th Cir. 1991). The burden of demonstrating good cause rests with the party seeking to set aside the default. <u>See</u> <u>TCI Group Life Ins. Plan v. Knoebber</u>, 244 F.3d 691, 696 (9th Cir. 2001).

The parties have differing interpretations of the above test.  In particular, Qtrax flips the test and argues that good cause to set aside a default is shown if (1) its culpable conduct did not

lead to the default, or (2) it has a meritorious defense, or (3) plaintiff will not be prejudiced if the default is set aside. (Def.'s Mot. at 4.) In other words, in Qtrax's view, it need only show that one of the foregoing factors is true to set aside default. In support of its argument, Qtrax cites the following quote from Judge Patels's decision in BMW Fin. Serv. v.Wexler:

> A court may deny a Rule 55(c) motion "if (1) the defendant's culpable conduct led to the default; (2) the defendant has no meritorious defense; or (3) the plaintiff would be prejudiced if the judgment is set aside." See Meadows v. Dominican Republic, 817 F.2d 517, 521 (9th Cir. 1987). *A court may vacate an entry of default "if any of the three factors is true.*" Franchise Holding II, LLC. v. Huntington Rest.'s Group, Inc., 375 F.3d 922, 926 (9th Cir. 2004).

2010 WL 668292 at *2 (N.D. Cal. Feb. 24, 2010) (emphasis added).

Qtrax points to the highlighted portion of the above quotation and asserts that a showing under any one of these three factors is sufficient to demonstrate good cause. However, it is readily apparent that the court in BMW inadvertently misstated the law.[1] The actual quote from Franchise Holding (following the recitation of the three factors) states: "As these factors are disjunctive, the district court was *free to deny the motion* 'if any of the three factors was true.'" 375 F.3d at 926 (quoting in part Am. Ass'n of Naturopathic Physicians, 227 F.3d at 1108) (emphasis added). The suggestion by Qtrax that Judge Patel intended to state that a showing of any one of the factors justifies *vacating a default* (as opposed to *denying a motion to set aside a default*) is undermined by Judge Patel's subsequent observation that "where the default was the result of the defendant's culpable conduct, a district court may refuse to set aside the default on that basis alone." BMW Fin. Serv., 2010 WL 668292 *2 n.1. Thus, it is clear that the party seeking to set aside a default must show that it was not culpable, that is has a meritorious defense, *and* that plaintiff will not be prejudice as a prerequisite to showing good cause—and the failure to show *any one of these three factors* is grounds for denying a motion to set aside the default.

---

[1] The quote is illogical, since it provides that a default may be set aside if the defendant was culpable, lacked a meritorious defense, or will prejudice the plaintiff.

**III.   DISCUSSION**

   **A.   CULPABLE CONDUCT**

"If a defendant has received actual or constructive notice of the filing of the action and failed to answer, its conduct is culpable." Franchise Holding, 375 F.3d at 926 (internal quotations omitted).  There is no dispute between the parties that Qtrax had actual notice of the action.  Qtrax obviously knew about the action when its CEO personally wrote to the Court asking for a forty-day extension of time to respond to the Complaint.  (Docket 6.)[2]  In addition, Qtrax was aware that Oracle was actively seeking to have a default entered against it.  That notwithstanding, Qtrax argues that its failure to answer the Complaint is excusable because of its CEO's travel schedule, the company's limited resources, and its belief that the parties had reached a settlement.  (Def.'s Mot. at 5.)

Qtrax's attempt to excuse its default on its CEO's travel schedule is not compelling.  Oracle served its Complaint on August 17, 2009.  Qtrax's CEO, Mr. Klepfisz, was out of the country from August 21, 2009 to September 21, 2009.  (Klepfisz Decl. ¶ 2.)  The day after he returned from his trip, he personally wrote to the Court on behalf of Qtrax for an extension of time to answer the Complaint, *which the Court granted*.  Although Qtrax had until *November 5, 2009*, to file its responsive pleading, it failed to do so, even though it had retained counsel shortly after obtaining the extension of time from the Court.  (Klepfisz Decl. ¶ 4.)  In addition, Mr. Klepfisz admits that he was in the country from September 21 through October 1, and later from October 15 through November 11 (id. ¶ 4), but never explains why Qtrax could not have responded to the Complaint during those time-frames and before the default was entered on November 9, 2009.  Thus, Qtrax's attempt to excuse its default on its CEO's travel schedule is not persuasive.[3]

---

   [2] In granting the requested extension, the Court delayed the proceedings to enable Qtrax to participate in the action and dispute the allegations made by Oracle.

   [3] Qtrax's claim that it did not respond to the Complaint due to its limited financial resources also is uncompelling.  Obviously, Qtrax had sufficient funds to retain counsel, but never explains why counsel never filed an answer.  In any event, Qtrax cites no authority for the proposition that its financial limitations constitute excusable neglect.

1   Likewise, Qtrax's claim that it did not respond to the Complaint because it believed the
2   parties were going to settle the case is not supported by the record.  In his declaration, Mr.
3   Klepfisz states that he thought that the parties had settled and that the case would be dismissed.
4   (Klepfisz Decl. ¶ 4.)  However, he also admits that Qtrax could not come up with the funds
5   necessary to consummate the settlement, which then "fell through" as a result.  (Id.)  Nowhere
6   in his declaration does Mr. Klepfisz state that Oracle had agreed to forego seeking a default as
7   a result of the parties' tentative settlement.[4]  To the contrary, Qtrax knew that during the course
8   of their discussions, Oracle was actively attempting to have a default entered against Qtrax—
9   yet, it did nothing.  Thus, even if Qtrax believed that a settlement was imminent, it was
10  incumbent upon Qtrax to take appropriate measures (such as a standstill agreement) to ensure
11  that its default would not be taken.  He did not do so.  In fact, he did not even file his motion to
12  set aside the default until the day before the hearing on Oracle's motion for default judgment
13  was about to take place, *eight months after the Court had granted his requested extension to*
14  *enable Qtrax to file a responsive pleading*.  Given these circumstances, Qtrax's failure to
15  respond to the Complaint cannot be excused.

**B.   MERITORIOUS DEFENSE**

17  "A defendant seeking to vacate a default judgment must present specific facts that
18  would constitute a defense."  TCI, 244 F.3d at 700.  This burden is "not extraordinarily heavy."
19  Id.  Rather, the defendant need only allege facts showing that "a sufficient defense is
20  assertible."  Id. (internal quotations and citation omitted).   Failure to present such facts is
21  grounds for denial of a motion to set aside a default. Franchise Holding II, LLC, 375 F 3d at
22  926.

23  Qtrax argues that Oracle will be estopped from enforcing the 2008 Order because it was
24  induced to enter into the agreement by Oracle's alleged "misrepresentations and/or omissions
25  of facts . . . ."  (Def.'s Mot. at 5.)  In addition, Qtrax contends that its defense will include
26  Oracle's "failure to provide software under the 2008 Order" and alleged failure to provide

---

[4] Oracle represents that its settlement proposal that has been "on the table" both prior and subsequent to the filing of the Complaint. (McKague Decl.¶¶ 12, 17, 22, 27, Docket 47.)

1  "certain credit to be given under the 2008 Order."  (Def.'s Mot. at 5.)  As will be discussed
2  below, these defenses are without merit.

### 1. Qtrax's Alleged "Misunderstanding"

As an initial matter, Qtrax fails to specify what the alleged misrepresentations were or provide any evidentiary support to establish that any misrepresentations were, in fact, made. Rather, Mr. Klepfisz's supporting declaration states only that "[he] was never informed that the 2008 Order for the unlimited deployment programs would terminate the license rights Qtrax had already paid for.  Had Qtrax known that such was the case, it would not have entered into the 2008 Order."  (Klepfisz Decl. ¶ 7.)  Yet, the agreement for the 2008 Order clearly states that the new licenses containing the "Unlimited Deployment Right" replaced all prior licenses, and that "You will no longer have any right to use the Converted and Replaced Licenses, nor will you be permitted to reinstate the Converted and Replaced Licenses."  (McKague Decl. ¶ 10, Ex. A § F.1.)  The agreement also states that Qtrax was not entitled to any credits or refunds for the prior licenses.  (Id.)

In its reply, Qtrax argues for the first time that "[Oracle] led Qtrax to believe that the 2008 Order would allow it to obtain some new programs for unlimited deployment and <u>enhance</u>, not replace, the licenses it had already purchased via the 2007 Order."  (Def.'s Reply at 5 (emphasis in original.)   This argument was not raised in Qtrax's moving papers and thus is not properly before the Court.  See <u>Zamani v. Carnes</u>, 491 F.3d 990, 997 (9th Cir. 2007) ("[a] district court need not consider arguments raised for the first time in a reply brief.").  That aside, Qtrax fails to provide any factual or evidentiary support for this assertion.  Nowhere in his declaration does Mr. Klepfisz make any claim that he believed that Oracle was obligated to "enhance" the existing licenses.  But even if he did, the 2008 Order makes no mention of enhancing existing licenses.  To the extent that Qtrax misunderstood the terms of the contract, such misinterpretation is not a meritorious defense.  See <u>Kucharczyk v. Regents of Univ. of Cal.</u>, 946 F. Supp. 1419, 1433 (N.D. Cal. 1996) ("under California law, a party is bound, even if he misunderstood the terms of a contract and actually had a different, undisclosed intention")

1  (citing Blumenfeld v. R.H. Macy & Co., 92 Cal.App.3d 38, 46 (1979) (internal quotations and alterations omitted)).

### 2. Emails

Oracle argues that its email exchanges with Qtrax show that Qtrax has acknowledged its liability for the $1.9 million debt under the 2008 Order. (Pl.'s Opp'n at 15-16.) Qtrax responds that the emails are not probative of the $1.9 million claimed by Oracle because these communications only concern outstanding consulting fees, which now amount to only $71,841.43. (Def.'s Reply at 5.) In addition, Qtrax emphasizes that there is no email in which it expressly acknowledges "owing Plaintiffs $1,883,591.55 or the validity of Plaintiff's claim." (Id.)

Qtrax is correct that there is no email in which it expressly concedes owing $1.9 million to Oracle. However, Oracle's counsel represents in his declaration that Mr. Klepfisz made that statement during one of their conversations. (McKeague Decl. ¶ 12.) Qtrax does not dispute this. In addition, Qtrax is incorrect that the emails address only the service fees issue. In fact, several of the emails discuss Qtrax's debt as "referenced in [the] complaint." (McKague Decl. Ex. C.) In addition, it is notable that in none of the emails does Qtrax take exception to its contractual obligation to Oracle nor does it complain about not receiving the appropriate software under the 2008 Order. While perhaps not an express concession, the lack of such objection supports Oracle's contention that these defenses are without foundation.

Alternatively, Qtrax argues in its reply that the emails are inadmissible under California Evidence Code section 1152(a), which precludes the use of offers to compromise as proof of liability. (Def.'s Reply at 3.) Because Qtrax has raised this argument in its reply, Oracle has not had an opportunity to respond to this particular argument. Nevertheless, Qtrax's contention is misplaced to the extent that it relies on the California Evidence Code. Since this case is pending in federal court, the Federal Rules of Evidence are controlling. See Feldman v. Allstate Ins. Co., 322 F.3d 660, 666 (9th Cir. 2003).

Federal Rule of Evidence 408 bars admission of offers to compromise "when offered to prove liability for, invalidity of, or amount of a claim that was *disputed as to validity or amount*." Fed.R.Evid. 408 (emphasis added); Dallis v. Aetna Life Ins. Co., 768 F.2d 1303, 1307 (11th Cir. 1985) (holding that there was no compromise under 408 because "[t]here [was] no evidence in the record that either the validity or the amount of the payment was ever the subject of dispute"). Here, there was no such dispute. Rather, the emails chronicle the parties' efforts to develop a payment plan for Qtrax to pay its acknowledged obligation to Oracle. Qtrax never challenged the validity or amount of its debt. Rather, Qtrax simply expressed that it was experiencing cash flow problems, and that it was hoping for an infusion of cash from an outside source which would allow it to pay the amount owed to Oracle. Moreover, there was no compromise. As succinctly stated by Oracle in its May 28, 2009 email: "we are not willing to allow Qtrax to use Oracle's intellectual property *without full payment*." (McKeague Decl. Ex. B (emphasis added).

### C. PREJUDICE TO ORACLE

"To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying the resolution of a case." TCI, 244 F.3d at 701. Instead, the standard is whether plaintiff's ability to pursue his claim will be hindered. Id. (quoting Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984)). For a delay to be prejudicial, it must "result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." Id. (internal citations omitted). Being forced to litigate on the merits cannot be considered prejudicial because the plaintiff would have had to litigate the merits of the case had there been no default. Id.

Oracle contends that setting aside the default at this juncture will be prejudicial because the alleged "misrepresentations" underlying Qtrax's newly-asserted estoppel defense occurred over two years ago, and that the passage of time has led to the loss of witnesses as "memories have faded and employees have moved on from [Oracle]." (Pl.'s Opp'n at 15.) As a general matter, it is true that "[u]nnecessary delay inherently increases the risk that witnesses' memories will fade and evidence will become stale." Pagtalunan v. Galaza 291 F.3d 639, 643

1  (9th Cir. 2002).  Qtrax does not directly dispute this, but nevertheless asserts that the delay
2  cannot be deemed prejudicial because Oracle already possesses the evidence in support of its
3  claims.  (Def.'s Reply at 6.)  While that may be true of documentary evidence, that reasoning
4  does not apply to the loss of evidence resulting from faded memories.  In addition, to the extent
5  that Qtrax is now claiming that it was misled as to what the 2008 Order provided, such
6  information logically would reside in both Oracle and Qtrax's possession.

   In sum, although perhaps not as compelling as the other factors, on balance, the issue of
   prejudice weighs in favor of denying Qtrax's motion to set aside default.

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Defendant's Motion to Set Aside Default is DENIED.  Plaintiff Oracle shall re-file and/or renotice its motion for default judgment, the referral of which was previously made to Magistrate Judge Zimmerman for a Report and Recommendation.

IT IS SO ORDERED.

Dated: September 3, 2010

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge